IVY CAVALIER AND ASHLEY RENE CARBO

VERSUS

ST. JAMES PARISH, STAR PIPE PRODUCTS, LTD., STAR PIPE USA, LLC, PROVIDENCE ENGINEERING AND DESIGN, LLC, ACBL TRANSPORTATION SERVICES, LLC AND RICHARD BUHLER

NO. 23-CA-424

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

ON APPEAL FROM THE TWENTY-THIRD JUDICIAL DISTRICT COURT
PARISH OF ST. JAMES, STATE OF LOUISIANA
NO. 39,152, DIVISION "E"
HONORABLE MADELINE JASMINE, JUDGE PRO TEMPORE, PRESIDING

April 24, 2024

**JOHN J. MOLAISON, JR.**
**JUDGE**

Panel composed of Judges Susan M. Chehardy,
Marc E. Johnson, and John J. Molaison, Jr.

**AFFIRMED**
    **JJM**
    **SMC**
    **MEJ**

FIFTH CIRCUIT COURT OF APPEAL
A TRUE COPY OF DOCUMENTS AS
SAME APPEARS IN OUR RECORDS

Jalisa Walker
Deputy, Clerk of Court

COUNSEL FOR DEFENDANT/APPELLANT,
PROVIDENCE ENGINEERING & DESIGN, LLC
    Sidney J. Angelle
    Eric B. Berger

COUNSEL FOR DEFENDANT/APPELLEE,
COHEN INDUSTRIAL SUPPLY CO.
    L. Etienne Balart
    Lauren C. Mastio
    Taylor K. Wimberly
    Sara B. Kuebel

**MOLAISON, J.**

In this personal injury action, appellant/defendant, Providence Engineering and Design, L.L.C., seeks a review of the trial court's grant of summary judgment in favor of co-defendant Cohen Industrial Supply Company. For the reasons that follow, we affirm.

## PROCEDURAL HISTORY

On January 23, 2019, plaintiffs, Ivy Cavalier and Ashley Carbo, petitioned for damages at the Twenty-Third Judicial District Court for the Parish of St. James. The plaintiffs alleged that Mr. Cavalier incurred injuries on January 25, 2018, in the course of his employment with R.E.S. Contractors, L.L.C. ("R.E.S."), at the Raw Water Intake Pump Station and the East Bank Water Treatment Plant in St. James Parish. Mr. Cavalier claims that a shifting pipe fell on his foot during a hydro pressure test at the pump station, which ultimately resulted in his foot's partial amputation. On October 13, 2020, Mr. Cavalier named Cohen Industrial Supply Company ("Cohen") as a defendant in his first supplemental and amending petition for damages, alleging that Cohen was responsible for ordering necessary products for the project at the direction of co-defendant, Providence Engineering and Design, L.L.C. ("Providence"). Mr. Cavalier asserted that Cohen was responsible for selecting the specific "Star Pipe connections" to be used for the job based upon the design from Providence. Mr. Cavalier contends that the failure of Star Pipe's connection ultimately led to his injury.

On December 19, 2022, Cohen filed a motion for summary judgment, which argued that Mr. Cavalier could not establish all of the elements of negligence against it.[1] On February 6, 2023, the court granted the motion for summary

---

[1] Cohen's motion for summary judgment was opposed by both Mr. Cavalier and Providence. Only Providence has appealed from the granting of Cohen's motion for summary judgment.

judgment after a hearing in a written judgment dated March 3, 2023. The instant appeal followed.

## ASSIGNMENT OF ERROR

The trial court erred when granting Cohen Industrial Supply, Inc.'s Motion for Summary Judgment.

## LAW AND ANALYSIS

On appeal, Providence asserts that the trial court erred in granting Cohen's motion for summary judgment. Specifically, Providence argues that there are genuine issues of material fact, such as whether Cohen was negligent in selecting, ordering, and shipping certain incorrect parts for the project. Conversely, Cohen contends Providence and R.E.S. were responsible for ordering the correct pieces per the project's design. Cohen also argues that it did not design or install the part in question, nor was it responsible for supervising the installation of any piece.

After an opportunity for adequate discovery, the court shall grant a motion for summary judgment if the motion, memorandum, and supporting documents show no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(A)(3). Factual inferences reasonably drawn from the evidence must be construed in favor of the party opposing a motion for summary judgment, and the court must resolve all doubt in the opponent's favor. *Willis v. Medders*, 00-2507 (La. 12/8/00), 775 So.2d 1049, 1050 (*per curiam*).

The initial burden is on the mover to show that no genuine issue of material fact exists. *Pouncy v. Winn-Dixie La., Inc.*, 15-189 (La. App. 5 Cir. 10/28/15), 178 So.3d 603, 605. If the moving party does not bear the burden of proof at trial, the moving party must only point out that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. *Id*. The adverse party must then produce factual support to establish that he can satisfy his evidentiary burden of proof at trial. *Id*. If the adverse party fails to do so, there is

no genuine issue of material fact, and the court shall grant summary judgment. *Roux v. Toyota Material Handling, U.S.A., Inc.,* 19-75 (La. App. 5 Cir. 10/23/19), 283 So.3d 1068, 1072, *writ denied*, 19-02052 (La. 5/1/20), 295 So.3d 942, *and writ denied*, 20-00030 (La. 5/1/20), 295 So.3d 953.

In determining whether summary judgment is appropriate, appellate courts review evidence *de novo* under the same criteria that govern the trial court's determination of whether summary judgment is proper. *Samaha v. Rau*, 07-1726 (La. 2/26/08), 977 So.2d 880, 882.

### Duty-risk analysis

To succeed on a claim of negligence in Louisiana, the plaintiff must prove five elements: (1) proof that the defendant had a duty to conform his conduct to a specific standard (the duty element); (2) proof that the defendant's conduct failed to conform to the appropriate standard (the breach element); (3) proof that the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries (the cause-in-fact element); (4) proof that the defendant's substandard conduct was a legal cause of the plaintiff's injuries (the proximate cause/legal cause/scope of liability/scope of protection/scope of duty element); and (5) proof of actual damages (the damages element). *Vince v. Koontz*, 16-521 (La. App. 5 Cir. 2/8/17), 213 So.3d 448, 455, *writ denied*, 17-429 (La. 4/24/17), 221 So.3d 67 (*citing Rando v. Anco Insulations Inc.*, 08-1163 (La. 5/22/09), 16 So.3d 1065, 1086).

### The duty element

It is axiomatic that a question of law is whether one owes a duty, and a question of fact is whether a defendant has breached a duty owed. *Brewer v. J.B. Hunt Transp., Inc.*, 09-1408 (La. 3/16/10), 35 So.3d 230, 240.

The record before us indicates that Cohen does not produce engineering schematics,[2] manufacture products,[3] or install/supervise the installation of any type of product.[4] The plaintiffs' only claim of liability against Cohen was that it had performed a "material takeoff" and subsequently supplied and selected building materials based on Providence's plans and specifications. They shipped these materials to R.E.S. for use in the project.[5]

R.E.S., in its own Accident/Injury Investigation Report dated January 26, 2018, opined that the "Preliminary Root Cause" of the accident was "A PVC Stargrip clamp [that] was installed on the ductal pipe." The purchase order for the project shows that R.E.S. ordered two types of Stargrip clamps, one for use on P.V.C. and the other for use on ductal iron pipe. There is a general allegation by the plaintiffs in their petition that Star Pipe "did not provide any instructions, warnings, or paperwork of any kind with the delivered flanges" (clamps). Cohen argues that it correctly identified and ordered the appropriate connections from Star Pipe and had no control over the connections from that point forward, including how and where R.E.S. installed them.

This Court has previously considered the issue of a part supplier's duty and potential liability to third parties when an injury results from using those parts. In *Contranchis v. Travelers Ins. Co.*, 02-840 (La. App. 5 Cir. 1/28/03), 839 So.2d 301, the builder employed the plaintiff, and the plaintiff became injured during the construction process upon falling through a pre-cut hole in a sheet metal panel. Among other defendants, the plaintiff sued the sheet metal supplier for the project

---

[2] As noted above, the site of the accident was designed by Providence Engineering and Design, LLC.

[3] There is no products liability claim as to Cohen and, in fact, the plaintiffs have sued the alleged manufacturer of the parts at issue, the "Star Pipe" companies. There is no allegation by the plaintiffs that Cohen knew or should have known of a defect in the products it sold in connection the project.

[4] It is not disputed that RES was the builder of the project where Mr. Cavalier sustained his injury. RES ordered the parts from Cohen as per Providence's design. It is also undisputed that Cohen did not direct RES during its construction of the project.

[5] Cohen admitted to performing the material takeoff in its motion for summary judgment.

on the theory that it was strictly liable to him because it failed to warn him about a "slippery substance" on the metal that he claims caused the accident. The plaintiff further argued that the supplier breached a duty to protect workers from slipping on the metal sheet, failed to advise those using the sheet metal of the hazards of working with the sheet metal at extreme heights, was unable to address safety procedures on construction at heights, and failed to provide safety instructions on the installation of skylights. The supplier filed a motion for summary judgment on the issue of liability, which the trial court granted. In affirming the granting of summary judgment, we reasoned:

> In this case, Contranchis was employed by A–1 Steel Erectors, a company engaged in the practice of erecting metal buildings. As Hercules points out, Louisiana courts have previously noted that such construction work is specialized *per se*. Courts have also held that there is no duty to warn "sophisticated users" of the dangers, which they may be presumed to know about because of their familiarity with the product. Apparently, the trial court concluded that, as an entity engaged in the specialty business constructing metal buildings, A–1 was a sophisticated user of sheet metal and had prior knowledge of applicable safety procedures. We find no error in this conclusion of the trial court. We further find no error on the part of the trial court in its determination that there was no issue of material fact that Hercules had no duty to warn A–1 and its employee, Contranchis, regarding the dangers of working with metal at heights of 18 feet or of the installation of skylights.

*Id.* at 303-04.

In *Rivnor Properties v. Herbert O'Donnell, Inc.*, 92-1103 (La. App. 5 Cir. 01/12/94), 633 So.2d 735, *writ denied*, 94-1293 (La. 9/2/94), 643 So.2d 147, and *writ denied*, 94-1305 (La. 9/2/94), 643 So.2d 147, we again considered the issue of the liability of a building materials supplier for an injury to a third party. In that case, the plaintiff sued several defendants for the alleged defective design and construction of a three-story office building. Among the defendants was a subcontractor, Howmet Aluminum Corporation, a supplier who designed, manufactured, and furnished the patented curtain wall system used in the building to the builder. After the trial, the court found that the problems that resulted from

water leakage into the building were the results of the design deficiencies by the architect and improper installation by the builder:

> The record is replete with evidence regarding the improper installation of the H.P.–175 system furnished by Howmet to the installer, Brandt Glass Company. Further, the record shows Howmet contracted with Brandt to provide its H.P.–175 system only, with no duty to provide supervision for installation. Thus, it was incumbent upon Brandt to properly install the system. If Brandt's personnel had problems, their duty was to contact Howmet for instructions and/or assistance. Brandt's failure to do so resulted in improper installation which contributed to the building's deficiencies.
> The trial court found Howmet was not liable as they provided a system and services that, if properly integrated into the building and properly installed, would have performed as intended. Further, because Howmet had no supervisory duties, they have no liability for installation deficiencies.

*Id.*, at 746.

In the instant case, there is no allegation of a product defect, only that the construction used incorrect parts. Cohen's motion for summary judgment includes an affidavit by Bryan Breaud, Providence's Engineer of Record for the Pump Station Project. Mr. Breaud stated that Providence's plans called for a "flanged connection" for the pipes that allegedly separated and caused the injury. R.E.S. did not follow Providence's plans when it installed a "Mechanical Joint" restraint instead of a flanged connection. In addition, Mr. Breaud stated that R.E.S. did not seek clarification from Providence regarding the plans regarding the 16" pipes and connections. Mr. Breaud concludes in his affidavit that "had the plans provide by Providence been followed, the failure of January 25, 2018 would not have occurred."

In the instant case, Cohen's undisputed role consisted of identifying parts for the project at issue from Providence's design and forwarding the order of any parts to Star Pipe for fulfillment. It is clear and undisputed that Cohen had no responsibility whatsoever for providing packaging or installing the materials, which would have fallen to Star Pipe, nor were they responsible in any way for

installing or supervising the installation of Star Pipe's products, a duty of R.E.S. and Providence. To the extent it is alleged that Cohen failed to recommend or supply the proper parts for use in construction, the record does not show that either Providence or R.E.S. personnel sought clarification on any part's use before installation or sought a determination of whether a given part exactly matched the specification required by Providence's overall design.[6] Also, the record does not show that any party complied with the request on Cohen's Order Shipment Notice to "check the material received against this listing" and to promptly inform Cohen of any discrepancies.

In this matter, the identification and installation of the correct parts were within the purview of the sophisticated users[7] who acquired them. We do not find that R.E.S.'s failure to use a flanged connection when the plans called for one can be attributed to Cohen when sending the correct parts to the site. We agree with the finding of the trial court that Cohen's duty fell within the confines of the purchase order and ended with the delivery of the products.

*Conclusion*

For the reasons above, after our *de novo* review of the record, we find no error in the trial court's ruling that granted Cohen's motion for summary judgment. Accordingly, we affirm the judgment of the trial court.

**AFFIRMED**

---

[6] Section 1.6.2.1 in Providence's contract with St. James Parish requires Providence to "reasonably and periodically observe the work and to advise OWNER of defects in the work which are reasonably apparent." Section 6.4 of the contract between St. James Parish and RES provides that RES "shall furnish and assume full responsibility for all materials. . . necessary for …completion of the Work."

[7] A sophisticated user is defined as one who is "familiar with the product," *Hines v. Remington Arms Co., Inc.*, 94-455 (La. 12/8/94), 648 So.2d 331, 337, or as one who "possesses more than a general knowledge of the product and how it is used." *Asbestos v. Bordelon, Inc.*, 96-525 (La. App. 4 Cir. 10/21/98), 726 So.2d 926, 955.

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
STEPHEN J. WINDHORST
JOHN J. MOLAISON, JR.
SCOTT U. SCHLEGEL
TIMOTHY S. MARCEL

JUDGES

CURTIS B. PURSELL
CLERK OF COURT

SUSAN S. BUCHHOLZ
CHIEF DEPUTY CLERK

LINDA M. WISEMAN
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX



FIFTH CIRCUIT

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY **APRIL 24, 2024** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

**CURTIS B. PURSELL**
CLERK OF COURT

# 23-CA-424

### E-NOTIFIED

23RD JUDICIAL DISTRICT COURT (CLERK)
HONORABLE MADELINE JASMINE (DISTRICT JUDGE)
HONORABLE KEYOJUAN G. TURNER (DISTRICT JUDGE)

ERIC B. BERGER (APPELLANT)
PETER M. GAHAGAN (APPELLEE)
MICHAEL D. PEYTAVIN (APPELLEE)
L. ETIENNE BALART (APPELLEE)

MORGAN A. DRUHAN (APPELLEE)
PHILIP G. WATSON (APPELLEE)
RENEE S. MELCHIODE (APPELLEE)
LAUREN C. MASTIO (APPELLEE)

TARA E. CLEMENT (APPELLEE)
CHARLES J. FORET (APPELLEE)
THOMAS W. DARLING (APPELLEE)
TAYLOR K. WIMBERLY (APPELLEE)

### MAILED

SARA B. KUEBEL (APPELLEE)
ATTORNEY AT LAW
201 ST. CHARLES AVENUE
SUITE 5100
NEW ORLEANS, LA 70170

BRYANT A. FITTS  (APPELLEE)
RACHEL MARTIN-DECKELMANN
(APPELLEE)
FITTS LAW FIRM, PLLC
4801 RICHMOND AVENUE
HOUSTON, TX 77027

SIDNEY J. ANGELLE (APPELLANT)
ATTORNEY AT LAW
400 POYDRAS STREET
SUITE 2300
NEW ORLEANS, LA 70130

JASON R. GARROT (APPELLEE)
ATTORNEY AT LAW
POST OFFICE DRAWER 51367
LAFAYETTE, LA 70505

BRIAN A. PENA (APPELLEE)
ATTORNEY AT LAW
829 BARONNE STREET
NEW ORLEANS, LA 70113